Fasteners, Inc. v. Fossil, Inc. Okay, the next case is number 161115, Romag Fasteners, Inc. v. Fossil, Inc. Mr. Brucki. Good morning. May it please the Court. Viewed in the totality of the circumstances, Fossil's defense of this hard-fought and high-stakes litigation was completely unexceptional. Without Fossil's knowledge, a third party put non-genuine Romag snaps in Fossil handbags. The infringement was not willful. The infringement was unintentional. Well, it's not for us to evaluate the totality of the circumstances, but we can look to see whether the district court made errors of law or fact in its analysis, and both sides have contended that there are such errors here. So I suggest that you address the specific errors that you're complaining about. Certainly, Your Honor. There are errors both in omission and in what the district judge actually found to make the case exceptional. And let me focus first on the circumstances that you did not take any consideration of, which is both Fossil's conduct and Romag's bad faith conduct, which, as you have recognized, is something that is relevant. In both the Gamar case and Straygeon, this Court said that you should look also – No, this Court didn't say it in Straygeon. I apologize. You said it in Straygeon. You gave some guidance to the Bar, I think, in terms of what the totality of the circumstances should involve. And in terms of the totality of the case, looking at Fossil's conduct first, we see that Fossil was a non-willful infringer, which is, I think, a pretty important thing. We did not participate at all in the infringement, and we, in addition, did not benefit from it. If you look at our overall conduct that the district court did not pay attention to, you see that we were the party that really acted reasonably. We were the party that withdrew claims. We had a patent false marking claim early in the case. When the statute was amended, we withdrew that counterclaim. Romag, on the other hand, made five applications, all of which were denied, to amend to assert that. In addition, we see that Fossil moved for summary judgment when it reasonably believed that it had support and that it could win and narrow the cases for trial. Romag, on the other hand, made no motions for summary judgment and now comes into the court and says, you know, all these things that Fossil was doing were completely unreasonable and we should get sanctions for them when they didn't even have the confidence in those. As you noted in Strajan, Judge Dyke, that the fact that a party doesn't move for summary judgment on issues suggests that they didn't believe that they were so unreasonable previously. In addition, as you noted in Strajan, the fact that they were allowed issues to proceed to trial and didn't move for summary judgment makes it less – makes it – it's not unfair in those circumstances to require them to pay their own attorney's fees since they didn't try to narrow the issues for trial. But in one respect, she seems – the district court seems to have made a mistake by saying the fact that she refused to grant Jamal prevented her from finding that the position was unreasonable. I'm not sure that's true because I think it's a general matter in Jamal being different from summary judgment. There's a reluctance on the part of district courts to grant Jamal in the middle of the trial as opposed to waiting to the end of the trial. So I'm not sure that it's correct to say that her refusal to grant Jamal during the trial indicates that unnecessarily the position was reasonable. If it was what I would call a prudential grant of Jamal, a denial of Jamal, if it was a situation where – with respect to one of our positions actually, a position of the willfulness of certain of the retailer defendants, she said, I'm going to deny your Jamal, but I'm doing it because we want to let the jury try it. And I'm very skeptical about that position. She did not make that qualification with regard to the non-infringement position. And in fact, Romag initially moved for a Rule 50. She denied it. And then they raised the issue with her, and they said, Judge, look, we know you denied our Rule 50, but we do not think that Fossil can make this argument to the jury because it would require them, the jury, to impermissibly speculate. There's no way that the jury could find for Fossil on that point. And the court said, well, let me hear both sides' evidence on it. She listened to both sides on it, and then she came to a conclusion about that. And she said, basically, I'm going to let you make that argument. So this was not a prudential grant or denial of a Rule 50. She expressly went further and said, I'm going to allow Fossil to make that argument to the jury. And she said, I'm not persuaded that we have such an absence of testimony, of evidence, that a jury couldn't conclude, even if an expert did not opine that the similarities in the snaps and the description of how long the stamper is used or should be used totally negates the idea that the jury conclude that the plaintiff has not met its burden, which is far from saying what the proper weight is to be accorded to this. So I think that Mr. Cass, who wrote Fossil's counsel, can make his argument as to what this particular evidence shows, and the plaintiff will now be forearmed to shoot it down. I'm not going to preclude it. So here we're in a situation where it's now being alleged that we were making an argument that was completely unreasonable when the judge said, it's reasonable. I'm going to let you make that argument. So it's not simply – I know she talked in terms of granting it, in terms of the Stenberg case, and she looked to the fact that it was a Rule 50. But if you look to the record, the record clearly shows that she went well beyond that and examined the evidence and said, you can make this argument. Keep in mind also that we're talking here on an issue that Romag had the burden of proof on. Romag had to prove that we infringe and that we use non-genuine stamps. Romag now says it's so clear from certain documents produced by a third-party supplier that we did use non-genuine stamps. Yet they never moved for summary judgment on that point. Instead, they went to trial, they introduced that evidence, and they introduced other evidence in order to meet their burden of proof. We then cross-examined it. We then presented evidence against that. How could it be an exceptional case that when they did not move for summary judgment on an issue, it was tried, they presented evidence, we cross-examined it, and then we made an argument that the judge said, yeah, I hear the argument. I don't think it's the greatest argument in the world, but I'll let you make it. How could that be exceptional? And that's really what the facts are in this case, Judge. How about the Lanham Act? I know this has to do with the Crossfield. How could it be that the Lanham Act is construed differently with respect to the Octane issue than 285? Well, Judge, we don't think that's an issue you need. I'll address that, but that's not an issue that this Court needs to address because Judge Arterton found under both Octane and the Patent Act and under the Second Circuit Lanham Act precedent that the argument that we're talking about now, the argument that the snaps were not genuine, the non-infringement position, she found under both those standards that it was not exceptional. So as the Second Circuit did recently in a case called Penshurst, since under either standard she was correct, you don't need to get to that issue. Now, if you want to talk about why the Lanham Act should be interpreted differently, certainly if you look at the Knoxell case, which was cited in Octane, which was Judge Ginsburg and Judge Scalia before they were on the Court, they put great weight in the fact that that's mentioned. But if you look at that, Judge Ginsburg makes clear that the legislative history under the Lanham Act has a dual standard, a standard for prevailing plaintiffs, which is this case. And the legislative history says in that case it's only going to be if it's fraud or malice or something more. And also if you're a prevailing defendant, in an exceptional case you can get it. So if you look at the legislative history, clearly the Supreme Court has said if there's a legislative history that suggests a different interpretation, the normal rule, of course, being that similar language should be interpreted similarly. But if there is reference in the legislative history, and in the Senate report there's a statement that in exceptional cases, i.e. in infringement cases where the acts of infringement can be characterized as malicious, fraudulent, deliberate, or willful, attorney's fees would be available. It then goes on to say as to prevailing defendants, in the case of exceptional cases, they can get it. And Judge Ginsburg in Knoxell says she highlights this differentiation. Now, Romag comes back and says, well, i.e. in that case really didn't mean i.e. It really means e.g. But we then have testimony by the Commissioner of Patents, and he says his understanding is that for infringers, a prevailing plaintiff case, that recovery would be permitted from infringers only when the acts are malicious, fraudulent, deliberate, or willful. So we do have record evidence in the legislative history as to exactly, for prevailing defendants and prevailing plaintiffs, what the Congress meant. So again, I don't think you need to decide that issue because she did decide, the district court did decide under the Patent Act that the claim, that the position was not unreasonable or exceptional. But if you do, I think there is a basis in Knoxell and in the legislative history for a differing interpretation. I know it's rare. Are you saying the only argument for attorney's fees under the Lanham Act related to the genuineness issue? I beg your pardon, sir? Are you saying that the only argument that Romag made for attorney's fees under the Lanham Act was the unreasonableness of the infringement? Yes, that's absolutely true. Thank you. I see that I'm in my rebuttal time, so unless there are other questions, I'm going to reserve some time. Thank you. Okay, now let's proceed. Let's hear from the other side. Mr. Fragman. Good morning, Your Honors. May it please the Court. I'm having a very hard time seeing how the district court was correct in finding that they didn't withdraw their inquiry defenses before trial because she herself said that. I think it was at the March 28th pretrial conference. She did, Your Honor. That's correct. And she noted in her decision when she was finding the facts here that there had been some indications, in fact, that these defenses were withdrawn, but that there were two indications that the claims, in fact, were not fully withdrawn. One was the witness remaining on the witness list, and the other is the fact that the defense was not, in fact, formally withdrawn. And it was in the context— So why do they have to formally withdraw? She says that—I got the date wrong. It's not March 28th. It's March 18th. The Court says, since we clarified at our last hearing that there's no invalidity defense being advanced. She said that specifically. So that seems to be pretty much a finding at that time. What was it? Two years earlier, something like that. There's no invalidity defense. Correct, Your Honor. She didn't think that they were going to be pressing the invalidity defenses at that point. But, Your Honor, she's resolving— What did they do wrong, then? What they did wrong was they left the witness on the witness list, and they did not formally withdraw the claim. Now, this is in the context of scorched earth litigation. I don't understand that. What if they—I mean, are you asking magic words or particular piece of document? I mean, if at the pretrial conference the Court says, we're not going to try invalidity, and everybody agrees, and everybody did agree, isn't that enough? Well, Judge Arderton found it was not enough, Your Honor. She found it was not enough, again, for these two reasons. But even if that were enough, I have to point out that that pretrial conference is six days before trial. And her finding of the exceptionality of the case, as Judge Duck, you pointed out, in Strachan, the question is the exceptionality of the case as a whole. And she's looking at the exceptionality of having pressed these invalidity defenses, which the other side acknowledges are a waste of everybody's time. I mean, that's their phrase. If they were a waste of everybody's time on March 28th— No, no, no. Because the patent claim is so small. Yes, Your Honor. I didn't say it's a waste of everybody's time because they're frivolous. They never acknowledged that they were frivolous. That's absolutely correct, Your Honor. But if they were a waste of everybody's time from a financial perspective, six days before trial, they were a waste of everybody's time three years before trial as well. And they were pressed. Of course, the judge found in the context of this case where a former customer, a much larger former customer, was caught red-handed with these counterfeits. But the trouble is that we have to review her decision here with respect to what she said. And what she said was contrary to her earlier finding that they continued to press them at trial. That's one of the bases for the attorney's piece of work. And if we conclude that she was wrong about that, don't we have to set it aside? No, Your Honor. You can still find that under the totality of the circumstances, she exercised her discretion correctly. But if she made a mistake, then she hasn't exercised her discretion properly, right? Well, there were several – obviously, several prongs for her determination. But she didn't make independent findings that one or two of these were sufficient. She looked at all of them together. How can we know that this mistaken finding was not the basis for the P award? Well, it's well established that you can affirm for any basis in the record. No, but we have to be sure that that's what she would have done. This is within her discretion, not ours. In that event, Your Honor, if you thought that this court could not look at the question of discretion as a whole and determine whether there were still significant – sufficient factors to uphold, then the proper remedy would be to remand to her for a determination as to whether without this factor – how did she exercise her discretion? What did she do? Okay. So let's talk about some of the other factors. Now, what about her suggestion that Judge Young found the indefiniteness defense to be frivolous? I've read that transcript or the opinion that Judge Young issued on summary judgment. I don't see that in there. Can you show me where Judge Young says that? Judge Young does not say himself that it borders on the frivolous. Judge Arterton has taken from Judge Young's decision from his saying that it was nothing more than ipso dixit, that it was groundless, that there – I mean, there are several phrases, all of which we cite in our briefs, from which she takes as a whole the notion that this indefiniteness argument bordered on the frivolous. But she didn't make her own finding that it was frivolous, right? Well, she is making her own finding that that argument was frivolous. This is a factual finding. I thought she was relying on Judge Young's finding, supposed finding. No, Your Honor. In terms of her predicate findings that ground her overall exercise – Where does she make her own finding that it's frivolous? She says it bordered on the frivolous. I'm sorry, Your Honor, I don't have the precise cite in her opinion from the joint appendix with me. You don't have the joint appendix? I do have the joint appendix, but I don't have that cite with me. It is in Judge Arterton's fee decision where she finds that it bordered on the frivolous. No, I don't think she found it bordered on the frivolous. I think she found that Judge Young said that, and I don't see that Judge Young said that. Okay. Let's continue while you're accommodating searches. Yes, thank you. Thank you, Your Honor. You're supposed to come to argument with better knowledge of the record. Your Honor, I'm sorry I don't have that specific citation. I should say that one of the major arguments raised by the other side is the notion that somehow the timing of the claimant construction and the summary judgment processes made it such that they really didn't have a chance, and their argument really wasn't that frivolous in the end. Are you talking about the infringement issue? No, I'm talking about the indefiniteness argument. Their argument is that it could not have been frivolous because, in fact, it depended on claim construction, and claim construction happened after the summary judgment briefs had been filed. And so they make the argument that they couldn't know how claim construction was going to go, and as a result of that, it was not a frivolous argument that they made or did not border on the frivolous. What about the finding that the district court made that she couldn't consider Romag's misconduct in connection with the TRL in awarding fees here because that had already been sanctioned? What's the basis for that? I don't understand that that's the rule. She was supposed to consider the totality of the circumstances. Why wouldn't she consider misconduct by a party even if it had been sanctioned otherwise? Oh, Your Honor, she did consider it. That is, she directly— No, she said I can't consider it. She said— No, she said she did not want. She said it was not a factor that weighed against her finding this an exceptional case because— Could we see what she said, please? Yes, Your Honor. Because it had already, in fact, been taken care of in her previous orders. Her language is that she had already provided sanctions and that this particular conduct did not bear on the case as a whole. It had to do with the— Show me where she said it doesn't bear on the case as a whole. Yes, Your Honor. These issues were limited in scope and have already— What page? Page? What page? There was no need—I'm getting the page, Your Honor. But she said these issues were limited in scope, have already been addressed. There was no need for further sanction. Okay, but that's not the same thing as saying it's irrelevant to the totality of the circumstance, other than it's already been addressed. But that's not a correct reason for failing to consider it as part of the totality of the circumstance. Well, Your Honor, she indisputably considered it. I mean she confronted and addressed the arguments that were made by the other side in her decision. She simply found in the exercise of her discretion that they did not make it a non-exceptional case. What about the argument with respect to the Lanham Act? Let's assume that you're correct, that the Lanham Act should receive the same construction as 285 with respect to the standard for awarding attorney's fees and that that's the octane standard. Let's assume you're correct about that. They say, well, the only argument for attorney's fees under the Lanham Act was that our infringement position was frivolous and the district court has already rejected that. What's the answer to that? The district court found that their infringement position was phantasmagorical, but it was backed only by paltry evidence as against overwhelming evidence on the side of Rome Act. The district court very clearly said she was not applying what she called the more lenient standard of octane fitness. So she wasn't applying that. Under what she thought to be the harsher, the older standard, obviously, of the circuit, which is very similar to the Lanham Act standard before octane fitness, she found that there was not willfulness and she had not granted the Rule 50 motion. And on the basis of those things, and those things alone, she denied fees under the Lanham Act. If this court thought that the octane fitness standard governed under the Lanham Act, which we believe it does, then it ought to be remanded to Judge Arterton in order to determine whether the non-infringement position of Fossil, in fact, does make this an exceptional case under octane fitness. That, of course, again, is a matter for discretion in the first instance. So if the legal standard is octane fitness, then it does need to be remanded for her determination on that. And I do want to just take a moment to go to the question of whether it is the proper standard. First of all, obviously, the language is identical in the Lanham Act and the Patent Act. And moreover, the language in the Lanham Act was directly borrowed from the Patent Act. So if we're to assume anything, we assume that Congress meant it to have the same meaning. The legislative history, though, shows that Congress meant it to have the same meaning. We cited the colloquy between Tetmeier and Kastenmeier, who was the head of the relevant House subcommittee and the father of the Copyright Act, who was saying, we're looking for symmetry in all of these fields, the three fields being, of course, patent, trademark, and copyright. Every circuit to have addressed the issue since octane fitness has determined that octane fitness is the standard under the Lanham Act. And there's no bar to this court doing so because the Second Circuit has very recently acknowledged that it has not addressed the question in the Penshurst case. It has acknowledged that it hasn't decided the issue. And so it is up to this court to, of course, predict what the Second Circuit would do if it needed to address the question, which this court does need to do here. If there are no further questions, I'll preserve the remainder of my time for rebuttal. Thank you. Thank you, Your Honor. Can you address the Lanham Act issue? Because when you were up before, you told me she made the same alternative findings under both the octane standard and the Second Circuit standard. Just pulling up these pages in her opinion, I don't see that. I'm on page 9. Excuse me. On page 4, ADD 4, Judge Arterton, that's the Section Patent Act, and she says, with respect to plaintiff's characterization of defendant's groundless argument that the snaps of the accused handbags were genuine. That's the argument that we're talking about. Recall that the infringement, the snaps were one entity, one device. They had the Romeg trademark on it, and that's why it was a trademark case. And they said that it copied their patent, so it was a patent case. So the question under both the Lanham Act and the Patent Act was, are the snaps genuine or not? And so here at the bottom of 4, she says, they're making this argument, we're making the argument that they were genuine. They're saying, the plaintiffs are saying that argument was groundless. And if you turn over to the next page, she then decides under the Patent Act analysis, and remember that Octane Fitness were trying to judge whether there was a lack of a reasonable argument on our part. They're looking to the substantive strength of our position. Here she's saying, by virtue of the fact that I granted the Rule 50, the argument could not have been groundless, could not have been unreasonable. And so this is in the context of Octane Fitness that she's making that determination. Now, we've already discussed why really her – But then she goes on and nevertheless finds the case exceptional under Octane Fitness for the Patent Act claims. But she doesn't cite that as one of the reasons for it. You're saying that her – she didn't find frivolousness as to the infringement defense to be a ground under 285, and you're saying that was the only argument for fees under the Lanham Act. Yes, sir, exactly. She rejected that argument. Her only grounds under the Patent Act were the indefinite misposition and the withdrawal of the remaining invalidity defenses. I find it very hard to pluck that out of a section where she's not talking about the Lanham Act. But on page 8, she specifically recites the old standards and says they don't get attorney's fees under the Lanham Act because there's no bad faith fraud or willfulness. I mean it's pretty clear to me that she's applying that standard and not making an alternative finding. You're trying to make us predict on what she said on the Patent Act part that she would come up with the same reasoning, but I don't see how we can do that. If we assume that the Patent Act standard and the Lanham Act standard are exactly identical and she has already determined under the Patent Act standard, octane fitness, that this argument that the snaps were not genuine is reasonable and therefore does not support an award of fees, which I think that's clearly what it reads here. I think everybody agrees. If she then goes on and says, well, I'm also going to analyze it under the Second Circuit's old – I shouldn't say old, continuing – Wait, wait, wait. Are you – I'm confused because I still think what you're trying to do is to get us to infer from a finding under an entirely different section of the opinion that she would make the same finding, not that she did make the same finding. She did make the finding under the Patent Act. In this section on page ADD5, she said, this argument that the snaps were not genuine is not going to support the conclusion that the case was exceptional for purposes of the Patent Act. If she never wrote a word on page 8 about the Lanham Act, she could have just said, I've already figured out that the only ground that you're asserting, Romag, doesn't equal an unreasonable position. Well, if she had said that, you'd be much better off. She didn't say it in the Lanham Act portion. She said – she used this LeBlanc-Sternberg principle that – she said that it's not so frivolous or groundless as to justify an award of fees. So she was expressly saying here this was not an unreasonable argument that they made with respect to the non-genuineness of the snaps. I think it is clearly there, Judge. And so I'm not asking you to reconstruct or figure out what she should say. I think that's exactly what she said there. I just – in terms of a couple of things, although I think the Court has clearly indicated that in terms of the timing defenses and the withdrawal, that I think it's clear that Judge Arnotin recognized that we had withdrawn them. It's not even the case that we need to have withdrawn them. Keep in mind that in a panel that Judge Newman was sitting on in Medtronic, the issue as to whether we didn't withdraw them or whether the timing of how we withdrew them was improper really goes to the question of whether it was reasonable or not. If it's a reasonable defense, we should be entitled to assert it. We had no obligation to withdraw it. I see that my time's up. I thank the Court. Are there any more questions? No questions. Thank you both. The case is taken under submission. Thank you, Your Honors. I'd like to start just by giving Judge Dyke the citation, which is JA-7, to Judge Arnotin's decisions of language that I mentioned earlier. And I also wanted to give you citations for what Judge Arnotin had to say, as a matter of fact, about the non-infringement defense, that it was a phantasmagorical story. That's 3199 of the Joint Appendix. I think just give us the information that we've been searching for. Sure, Your Honor. Again, that the contrary evidence was overwhelming. Judge Arnotin, let me just, Judge Hughes, in response to your earlier question, there was an error made both with respect to infringement under the Patent Act and infringement under the Lanham Act, because in both of those, Judge Arnotin, in fact, applied this rigid standard, the rigid standard of LeBlanc Sternberg, saying that because she had not granted the Rule 50, she could not consider these issues for the totality of the circumstances in determining whether the case was exceptional. So that doesn't tell us, as opposing counsel said, that actually under any standard, Judge Arnotin would come to the same thing. It just tells us that Judge Arnotin made the same mistake in the issue on the conditional cross-appeal issue. We need the citations that Judge Dyke had asked for. I don't think of – No, that's right. You do have the cross-appeal. My apologies. Proceed. Thank you, Your Honor. I want to – Obviously, this is an abuse of discretion context. Can I just ask, because I'm still not sure of this argument. I mean, if we agree with you that the Lanham Act standard is the same as Optane Fitness, it seems that I would find it hard to believe that the Supreme Court would come up with two different interpretations for the same language. Why isn't your friend's argument that the only issue for the Lanham Act, as opposed to a bunch of other issues under the Patent Act, she's already said wasn't enough to find it exceptional. Isn't that – I mean, if she said that, that this is the only – and I don't know if you agree. Maybe you don't agree that it's the only issue under the Lanham Act claims. But if it is the only issue and she's already said it's not enough to make it exceptional under a Patent Act claim, why wouldn't that translate to a no exceptional finding under the Lanham Act? Well, because she thought she was bound by this rigid rule saying that if she had denied – No, no, no. I mean, that's not addressing the question because she made the finding of this issue under the Optane Fitness rule is not exceptional for a patent case. If it's the same standard for a Lanham Act case, why can't we assume she would make the same finding? I guess with all due respect, I'm not sure why it's not relevant that she found herself bound by the Rule 50 rule. But she thought that if she denied Rule 50 – Because it's the same argument. Let's say you have the same argument for patent infringement and trademark infringement. And you say under the Optane Fitness standard, this is not sufficient to show an exceptional case. Well, if the standard is the same for a Lanham Act case, doesn't that translate to not exceptional? Yeah, with nothing else there, Judge Hust, I would agree. Well, that's what I was asking. Then I agree. But there is something else here. And that something else here is that she did not properly apply Optane Fitness with regard to the infringement question because she thought that she couldn't look to the question of whether it was exceptional. What other arguments did she make except the one that she appears to have rejected about the infringement case? Under the Lanham Act, you mean? Yes. Yeah, that was the main argument. There's nothing else, obviously, that's been raised on cross-appeal. Just that. So you think that she might have come up with a finding that this issue wasn't exceptional under the Patent Act but was exceptional under the Lanham Act? Well, we think she was wrong in the way she applied Optane Fitness here, Your Honor. I insist that. You mean to the Patent Act claim? Well, with regard only to the infringement issue under the Patent Act claim. And this is at page 5 of the Joint Appendix. She's asking whether it's frivolous or groundless. That's not the same inquiry that she is conducting with regard to the rest of the issues. And that's because of the Rule 50. You're saying that she erred even in her exceptional case finding on the Patent Act part of this and that if she had applied a proper standard, it would have been exceptional. That is the first issue of our cross-appeal, and it's a conditional cross-appeal to be sure. Sorry. I was a little confused. I've got it. Let me just close by saying why this is an abusive discretion standard on the facts of this case. There were some comments made at the very beginning that said, well, look, you know, ROMAC never moved for summary judgment on infringement. Why didn't it do that if it really thought this was a frivolous case? And this harkened back to the Strachan decision, which, of course, involved different circumstances. But why didn't it do it? Judge Arnerton knew why it didn't do it. It didn't do it because the question of willful infringement was going to be tried anyway. And all the same witnesses, all the same facts were going to be brought there for the question of infringement. So it wasn't going to accomplish anything to move for summary judgment on the infringement question when you'd still have to have the same trial that went forward after that. Those sorts of findings, knowledge, facts, not all of which, of course, appear in the written record, are beneath a district court's determination as to whether a case is exceptional. This district court did live with the case for many months, longer than many full cases in the Eastern District of Virginia, saw the entire trial, all the pre-trial, all the post-trial, and came up with this fees decision one week after resolving the post-trial motions. She knew this case, and this court should affirm her exercise of discretion. Thank you. Okay. Thank you. The case is taken under submission.